UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION NO. 15-0050 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| S.P. DAVIS, SR., ET AL. | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court are the United States of America's ("the Government") Motion for Summary Judgment (Record Document 32) and Defendants S.P. Davis, Sr. ("Davis"), Andrew Davis, Jr., and Willie J. Singleton's ("Singleton") Motion for Summary Judgment (Record Document 33). Because the Court finds that there is no genuine issue of material fact and that the Government is entitled to judgment as a matter of law, the Government's Motion is hereby **GRANTED**, and Defendants' Motion is hereby **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case is the latest in a series of cases involving the failure of three related businesses partially owned by Defendants Davis and Singleton to pay federal payroll taxes in the late 1990s. The factual circumstances leading to the failure to pay these taxes are described in detail in <u>Davis v. United States</u>, 2008 U.S. Dist. LEXIS 80918 (W.D. La. 2008), <u>aff'd</u>, 402 Fed. Appx. 915 (5th Cir. 2010). In 2002, the Internal Revenue Service (IRS) made assessments against Davis, Singleton, and others for these unpaid taxes. <u>See</u> Record Document 32-1 at ¶ 1. In 2003, the IRS filed a Notice of Federal Tax Lien in the records of the Clerk of Court of Caddo Parish, Louisiana regarding these unpaid taxes as to Davis and Singleton. <u>See</u> Record Documents 32-5 and 32-6. The IRS re-filed these liens in 2011. <u>See id.</u>

In 2006, Davis filed suit in this Court seeking a refund of the amounts he had paid toward the federal tax liabilities that the IRS had assessed against him. See Davis, 2008 U.S. Dist. LEXIS 80918 at *9. The Government counterclaimed against Davis for full payment of the amounts owed, and it also added Singleton and others as parties seeking judgments against them for the amounts owed. See id. This Court granted the Government's Motion for Summary Judgment in that action, holding that Davis and Singleton were jointly and severally liable for the amounts owed. See id. at *33-34. The Court issued a judgment against Davis for $3,152,652.85 and against Singleton for $3,152,757.49. See id. at *34.

In 2012, the Government filed suit for forfeiture and forced sale of Davis' homestead under 26 U.S.C. § 7403. See United States v. Davis, 2015 U.S. Dist. LEXIS 58947 (W.D. La. 2015). The Court granted the Government's Motion for Summary Judgment in this suit as well. See id. The Court rejected Davis' argument that his children were entitled to a portion of the sale proceeds because they had inherited a portion of the property from Davis' deceased wife under Louisiana's intestate succession law. See id.

On May 15, 2012, Defendant Boardwalk Investors/US Bank ("Boardwalk Investors") purchased tax sale title to the property at 4050 Linwood Avenue, Shreveport, Louisiana 71108 after the property taxes were not paid. See Record Document 32-9. Defendants Davis, Singleton, and Andrew Davis, Jr. had purchased this property in 1984, with each taking an undivided one-third interest in the property. See Record Document 32-3. Though notice of the sale was provided in a local newspaper in accordance with Louisiana law, notice of the sale was not provided to the Government in the manner required by 26 U.S.C. § 7425(c).

The Government filed the instant lawsuit on January 9, 2015, seeking forfeiture and forced sale of Davis and Singleton's interests in this property. See Record Document 1 at 2. Both Andrew Davis, Jr., and Boardwalk Investors were included as Defendants in the instant suit under the requirements of 26 U.S.C. § 7403(b) even though they are not liable for Davis and Singleton's tax debt.

The parties (with the exception of Boardwalk Investors) filed cross-Motions for Summary Judgment, with each side contending that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. See Record Documents 33 and 34. The Government seeks a judgment permitting foreclosure on the property and permission to sell the property as a whole, with payment of a portion of the proceeds to Andrew Davis, Jr. for his interest and repayment of the property taxes paid by Boardwalk Investors. See Record Document 1 at 8.

## LAW AND ANALYSIS

### I. LEGAL STANDARDS

#### A. The Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record." Fed R. Civ. P. 56(c)(1)(A). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." Fed. R. Civ. P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See id. at 325; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d at 1075.

Additionally, in deciding a summary judgment motion, courts "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." Id. Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id.

### B.  Foreclosure Actions Pursuant to 26 U.S.C. § 7403

Section 7403 of the Internal Revenue Code provides a method for the Court to enforce a federal tax lien when the Government files a civil action to enforce the lien against a delinquent taxpayer's property. The Government must include all parties with an interest in the property at issue as parties to the action. See 26 U.S.C. § 7403(b). This Section sets out the following procedure for such a suit:

> The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sales according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C. § 7403(c).

Thus, the Court must determine whether the Government has a valid lien upon the property at issue in the suit and the interests of the other parties in the property. Then, the Court may allow foreclosure of the lien on the property and order a sale. The decision to allow foreclosure on the property is one in which the Court may exercise a "degree of equitable discretion," as proceedings under § 7403 are by their nature proceedings in equity. United States v. Rodgers, 461 U.S. 677, 708 (1983). However, such discretion is not "unbridled discretion." Id. at 709. There are "virtually no circumstances, for example, in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer himself or herself." Id.

A court *may* exercise its limited discretion to decline to sell a property against which there is a federal tax lien when the delinquent taxpayer co-owns the property with someone else. See id. In such situations, there are certain factors that the court must consider: (1) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes;" (2) whether the third party with a nonliable separate interest in the property would, in the normal course of events . . . have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors;" (3) "the likely prejudice to the third party, both in personal

dislocation costs and in . . . undercompensation;" and (4) "the relative character and value of the nonliable and liable interests held in the property." Id. at 710-11. Thus, consideration of these factors allows the Court to balance "the Government's interest in prompt and certain collection of delinquent taxes and the possibility that innocent third parties will be unduly harmed by that effort." Id. at 709.

## II.   ANALYSIS

The Government's Motion makes a straightforward argument that it is entitled to foreclosure and sale of the subject property because it holds duly-recorded federal tax liens and judgments imposing joint and several liability upon Davis and Singleton for their unpaid taxes. See Record Document 32-2. Davis, Singleton, and Andrew Davis, Jr. argue that: (1) under the factors outlined in Rodgers, foreclosure and sale of the property is inappropriate; and (2) even if foreclosure and sale is appropriate, Davis' children should each receive 1/12 of the proceeds because they each inherited a 1/12 interest in the property at the death of Davis' wife through Louisiana's intestate succession law. See Record Document 33-1. In response, the Government contests both of these arguments. See Record Document 39.

### A.  The Rodgers Factors Weigh in Favor of Foreclosure and Sale.

Defendants correctly point out that the Court has some discretion in deciding whether to grant a foreclosure and sale in § 7403 proceedings under Rodgers. See Record Document 33-1 at 5-6. Defendants argue that (1) the property in question would not sell for its appraisal value and would represent a tiny portion of the overall tax debt; (2) the Government cannot show that it will be prejudiced if the Court decides not to allow a forced sale to proceed; (3) allowing a forced sale would be "an unjust and harsh

remedy;" (4) the Government is pursuing this remedy out of a "punitive and retaliatory motive" evidenced by the fact that the Government has not pursued such remedies against Davis and Singleton's former co-owners of the companies; (5) Davis and Singleton would be greatly prejudiced by allowing a forced sale of the property. See Record Document 33-1 at 6-7.

Defendants' arguments are mostly irrelevant under the Rodgers factors, and the Court finds that there is no genuine issue of material fact in how these factors apply to the instant case. The property's likely sale price as a portion of the total tax debt of the taxpayer is simply not a relevant consideration under Rodgers. See 461 U.S. at 709-11. The Government is not obligated to show that it will be prejudiced if the Court declines to order foreclosure and sale. See id. Allowing a foreclosure and forced sale is a harsh remedy, but it is one that is expressly allowed by 26 U.S.C. § 7403 to satisfy a federal tax debt. Whether the forced sale is an unjust remedy in a particular case is an equitable determination to be made under the Rodgers framework, but the Court in Rodgers expressly declined to give any weight to considerations of fairness to the delinquent taxpayer. See id. at 709. The Government's motive in filing the foreclosure action is also not relevant under Rodgers. See id. at 709-11. Finally, as previously stated, prejudice to the delinquent taxpayers is not a consideration to be given any weight in deciding whether to grant foreclosure and sale. See id. at 709.

The Government's arguments correctly apply the Rodgers factors. See Record Documents 32-1 and 39. The important consideration under the first Rodgers factor is whether the Government would be prejudiced if it were forced to foreclose upon and sell only the portion of the property owned by the delinquent taxpayers themselves and not

the portion owned by nonliable co-owners. See id. at 710. The Court finds that the Government's overall recovery would be lower if it were forced to foreclose upon only the portion of the property owned by Davis and Singleton. Such a sale would not include the 1/3 interest owned by Andrew Davis, Jr., or the tax sale title owned by Boardwalk Investors. Partial interests in property often sell for less than an equivalent pro rata share of the whole property, and courts have recognized this fact in the context of valuing property interests for tax purposes. See Estate of John L. Baird v. Commissioner, 2001 Tax Ct. Memo LEXIS 292 at *24-29 (T.C. 2001) (recognizing that "under Louisiana law, there are uncertainties and disabilities associated with an undivided minority interest in property" that reduce the value of such an interest to less than its pro rata value and approving a 60 percent valuation discount in fractional interests in immovable property for estate tax purposes). Thus, the first Rodgers factor weighs in the Government's favor, as the Government would be prejudiced if it were only able to foreclose upon and sell Davis and Singleton's interests in the property.

The second factor asks "whether the third party with a nonliable separate interest in the property would, in the normal course of events . . . have a legally recognized expectation that" his or her interest in the property "would not be subject to forced sale by the delinquent taxpayer or his creditors." Rodgers, 461 U.S. at 710. Discussing this factor, the Court contrasted the extensive protections against forced sale of a Texas homestead property under Texas law with the fact that all co-owners have the right to seek a partition by judicial sale of the property in which they own an interest. See id. at 711. The Court stated that this type of ownership interest is "further along the continuum" of property interests in terms of protection against forced sale, meaning that there is a much weaker

argument against foreclosure and sale when the nonliable property interest is a mere fractional undivided interest in the property rather than a protected interest like a homestead interest. See id.

Co-owners (owners in indivision) under Louisiana law, like tenants in common and joint tenants under the common law property system, have a right to demand partition in kind or by sale. See La. C.C. arts. 807, 809-11. Andrew Davis, Jr. owns a 1/3 interest in the property at issue here, an interest he acquired in 1984 with Davis and Singleton. See Record Document 32-3 (the original property conveyance). Thus, Andrew Davis, Jr. owns a fractional undivided interest in the property, and has little protection against a forced sale. Therefore, the second factor also weighs in favor of the Government.

The third factor requires the Court to "consider the likely prejudice to the third party, both in personal dislocation costs and . . . undercompensation." Rodgers, 461 U.S. at 711. The property at issue is commercial property used for the operation of Davis and Singleton's law offices. See Record Document 33-1 at 7. Defendants make no argument that Andrew Davis, Jr. currently uses any part of the property for a commercial purpose, such as the operation of a business of his own, so there is no evidence that any prejudice in the form of personal dislocation costs to him would result from foreclosure and sale. As explained at 7-8, *supra*, sale of the entire property will result in a higher sale price for all involved, including Andrew Davis, Jr.; thus, he will suffer no prejudice from undercompensation. The same is true of Boardwalk Investors' tax sale title, as such title conveys no possessory rights to its owner. See La. R.S. § 47:2121 *et seq*.

Finally, the fourth factor requires the Court to "consider the relative character and value of the nonliable and liable interests held in the property." Rodgers, 461 U.S. at 711.

The Court stated that when the nonliable party "has no present possessory or fee interest in the property, there may be little reason not to allow the sale." Id. "If, on the other hand, the [nonliable] party not only has a possessory interest or fee interest, but that interest is worth 99% of the value of the property, then there might well be virtually no reason to allow the sale to proceed." Id. As discussed, Boardwalk Investors' rights in the property are limited and nonpossessory, so it is miniscule compared to the portion of the property subject to the federal tax lien. See La. R.S. § 47:2121 *et seq.* Andrew Davis, Jr.'s interest is an undivided 1/3 interest in the property, which means that it falls somewhere between the two extremes mentioned in Rodgers. However, the Court finds that this factor weighs in favor of the Government, as 2/3 of the property is subject to the Government's tax lien.

Thus, the Court rejects Defendants' arguments regarding the Rodgers factors. All four of these factors weigh in favor of granting the Government's requested relief of foreclosure and sale of the entire property at issue, with compensation to Andrew Davis, Jr. for his 1/3 interest and repayment of the property taxes paid by Boardwalk Investors.

> **B. The Government's Tax Liens Attach to the Entirety of Davis' One-Third Interest in the Property.**

As an alternative to the Rodgers-based arguments addressed above, Davis argues that if the Court grants the Government's requested relief of foreclosure and sale, his children should each receive 1/12 of the proceeds of the sale. See Record Document 33-1 at 8-10. Davis asserts that under Louisiana law, his 1/3 interest in the property in question was community property, and that a 1/6 interest in the property therefore passed immediately at the death of his wife to his children. See id. Thus, Davis asserts that the Government would only be entitled to the 1/3 of the proceeds of sale attributable to

Singleton's interest and the 1/6 of the proceeds of sale attributable to Davis' remaining 1/6 interest. See id. at 10.

The Court rejects this argument. It is true that, assuming that Davis' 1/3 interest was community property, his wife's 1/6 interest in the property passed to their children in equal proportions at her death. See La. C.C. arts. 880 *et seq*. This leaves each of them as 1/12 naked owners of the property, with their interests subject to the usufruct of Davis. See id. However, it is also true that if the interest Davis and his wife had in the property at issue was community property, it is liable for the tax obligation that Davis incurred to the Government. Louisiana Civil Code Article 2357 governs the satisfaction of an obligation after the termination of a community property regime, stating:

> An obligation incurred by a spouse before or during the community property regime may be satisfied after termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation.

Thus, under Louisiana law, the property at issue is property of the former community regime of Davis and his spouse. Davis' federal tax obligation was incurred during the existence of the community property regime. Thus, the entire 1/3 interest that Davis and his wife took in the property is liable for payment of the federal tax obligation that Davis incurred during the existence of the community property regime. The Court reached the same conclusion in addressing the same argument in United States v. Davis, 2015 U.S. Dist. LEXIS 58947 (W.D. La. 2015).

### C. The Government's Tax Lien Survived Boardwalk Investors' Purchase of Tax Sale Title, but Boardwalk Investors Is Entitled to Reimbursement for Property Taxes Paid.

Boardwalk Investors filed an answer in the instant lawsuit, but it did not file a response to the Government's Motion for Summary Judgment. See Record Document 7.

In its answer, Boardwalk Investors asserted two affirmative defenses and sought to move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(c). See id. at 4. This attempt at making motions to dismiss is inadequate under Local Rule 7.4 of the Western District of Louisiana, as such motions must be accompanied by a Memorandum in Support; thus, the Court will not address them. As the Government seeks relief against Boardwalk Investors in the instant action, as well, however, the Court must at least address Boardwalk Investors' interest.

As a threshold matter, it must be noted that Boardwalk Investors' purchase of tax sale title did not affect the Government's lien on the property. Boardwalk Investors purchased tax sale title to the property on May 15, 2012. See Record Document 32-8 (the tax sale certificate). As part of its summary judgment evidence, the Government attached Boardwalk Investors' response to the Government's interrogatories. See Record Document 32-7. From these interrogatories, the tax sale certificate, and the other summary judgment evidence, there is no indication that the Government was ever provided with the written notice required for sale of property in which the Government has an interest in accordance with 26 U.S.C. § 7425(b).

Such notice is required if the Government's lien is on file for more than 30 days in the real property records of Caddo Parish. See id. As the Government filed the Notice of Federal Lien for the property in question in 2002 and renewed it in 2011, notice in accordance with 26 U.S.C. § 7425(b) was required. See Record Documents 32-5 and 32-6. Because the Government never received such notice, Boardwalk Investors' purchase of tax sale title did not affect the Government's lien on the property. See Myers v. United States, 647 F.2d 591, 595-601 (5th Cir. 1981).

The matter of how much of the sale proceeds Boardwalk Investors is entitled to receive remains an open question. In its Memorandum in Support of its Motion for Summary Judgment, the Government seeks a judgment ordering that a portion of the sale proceeds be paid to Boardwalk Investors "for reimbursement of its payment of property taxes." Record Document 32-2. In its answers to the Government's interrogatories, Boardwalk Investors claims that it is entitled to a total of $7,413.63 for its interest in the property, with $5,544.14 representing actual property taxes paid, $1,703.59 representing interest, and $165.90 representing fees. See La. R.S. §§ 47:2127(B) and 47:2161.

Thus, though the Government agrees that Boardwalk Investors is at least entitled to reimbursement for the actual amount of property taxes paid, it is unclear whether the Government agrees with the assertion that Boardwalk Investors is also entitled to interest and fees. Because the Government has not adequately addressed the issue and Boardwalk Investors has made no response to the Government's Motion for Summary Judgment, the Court will issue judgment for the Government using the language it seeks without determination of the specific amount owed to Boardwalk Investors. See Cottonwood Dev. v. Moter, 2016 U.S. Dist. LEXIS 167708 at *7-8 n.6 (W.D. La. 2016) (reaching a similar conclusion regarding interest and fees when the parties had not adequately addressed the issue).

## CONCLUSION

From the summary judgment evidence, it is clear that there is no genuine dispute as to any material fact and that the Government is entitled to judgment as a matter of law. Defendants Davis, Singleton, and Andrew Davis, Jr.'s arguments regarding the Rodgers

factors misapply these factors, and Davis' argument regarding his children's interests in the property at issue disregard Louisiana law permitting satisfaction of Davis' tax debt from former community property. The Government correctly applied the Rodgers factors and is entitled to seize and sell the property at issue under 26 U.S.C. § 7403. The Government is entitled to judgment (1) foreclosing its federal tax lien against 4050 Linwood Avenue, Shreveport, Louisiana 71108; (2) ordering that the property be sold according to law, free and clear of the claims of all other parties herein; and (3) ordering that the proceeds of the sale be paid first to Boardwalk Investors for reimbursement of its payment of property taxes, then to the Government for the costs of the sale, and finally 1/3 of the remainder to Andrew Davis, Jr. for his interest and 2/3 of the remainder to the Government to be applied to the tax debts of Davis and Singleton.

Therefore, **IT IS ORDERED** that the Government's Motion for Summary Judgment (Record Document 32) be and is hereby **GRANTED**, and Defendants Davis, Singleton, and Andrew Davis, Jr.'s Motion for Summary Judgment (Record Document 33) be and is hereby **DENIED**.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, on this the 5th day of January, 2017.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE